# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 16, 2013 Session

**KAREN RENAE ALEO v. JOE WEYANT**

**Appeal from the Circuit Court for Montgomery County**
**No. MCCCCVCT101126      Tom E. Gray, Judge**

---

**No. M2013-00355-COA-R3-CV - Filed December 12, 2013**

---

Client sued her former attorney for legal malpractice, breach of contract, and negligent infliction of emotional distress arising from the attorney's failure to include in the marital dissolution agreement, prepared for the client and incorporated into Final Divorce Decree, provisions that would permit the client to receive one-half of her husband's military pension and to be listed as the beneficiary of his Survivor Benefit Plan following their divorce. The trial court granted summary judgment to the attorney on the grounds that the statute of limitations had passed on the malpractice and the breach of contract claims and that the evidence did not support a finding of serious mental injury sufficient to support the negligent infliction of emotional distress claim; client appeals. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, M. S., P. J., and FRANK G. CLEMENT, J., joined.

Peter M. Napolitano, Clarksville, Tennessee, for the appellant, Karen Renae Aleo.

Thomas F. Mink, II and Charles M. Duke, Nashville, Tennessee, for the appellee, Joe Weyant.

## OPINION

This appeal arises out of a legal malpractice action filed by Karen Aleo against Attorney Joseph Weyant arising from Attorney Weyant's handling of a divorce between Ms. Aleo and her former husband, Michael James Aleo. On June 1, 2010, Ms. Aleo filed a complaint alleging that Attorney Weyant had failed to include provisions in the marital dissolution agreement which was incorporated into the Final Decree of Divorce specifying

that she would receive fifty percent of her former husband's military pension for the rest of her life and that she would be named as her former husband's beneficiary under his Survivor Benefit Plan; she asserted that, as a result of this failure, she would not receive the benefits as she and her former husband had agreed. The complaint alleged that the failure to include these provisions constituted professional negligence, breach of contract, and negligent infliction of emotional distress. Attorney Weyant answered the complaint on September 9 generally denying the allegations and asserting five affirmative defenses.[1]

Attorney Weyant filed a motion for summary judgment on October 24, 2012, supported by a memorandum in support of the motion, a statement of undisputed material facts, and the depositions of Ms. Aleo, Attorney Peter Napolitano, and himself. Ms. Aleo filed a response opposing the motion, which response included her "Statement of Undisputed and Disputed Material Facts." After argument, the court entered an order granting the motion, stating:

> [I]t is the Court's opinion that, based upon the date of discovery of damage to the plaintiff and Section 28-3-104 of the Tennessee Code Annotated, the statute of limitations for bringing an action against the defendant, Joe Weyant, based upon professional negligence and/or breach of contract has expired, and the Motion for Summary Judgment presently pending should be granted on behalf of the movant, Joe Weyant.
>
> The Court is further of the opinion that, based upon the entire record, particularly the deposition testimony of the plaintiff, Karen Aleo, there is no evidence of any serious mental injury to the plaintiff, Karen Aleo, and, therefore, an essential element of the tort of negligent infliction of emotional distress is missing; therefore, the Motion for Summary judgment filed on behalf of the defendant, Joe Weyant, as to negligent infliction of emotional distress is granted.

Ms. Aleo appeals, contending that the trial court erred in granting summary judgment because of its "failure to properly apply the 'discovery rule'" and its failure to consider and

---

[1] The affirmative defenses were: (1) that the action was barred by the statute of limitations at Tenn. Code Ann. § 28-3-104(a) (2); (2) failure to state a claim upon which relief can be granted, Tenn. R. Civ. P. 12.02 (6); (3) comparative fault of Ms. Aleo and her former husband, Michael James Aleo; (4) failure to join Mr. Aleo as a party; and (5) untimeliness of the suit because all potential remedies in the underlying divorce action had not been exhausted. He amended his answer on April 19, 2011 to include the additional affirmative defense of comparative fault of Attorney Peter Napolitano, who began assisting Ms. Aleo in October 2008 and filed the instant suit on her behalf.

apply the doctrines of fraudulent concealment and equitable estoppel; she also complains that the court erred in dismissing her claim for negligent infliction of emotional distress.

## STANDARD OF REVIEW

Summary judgment is an appropriate vehicle for resolving a case where a party can show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; see also Tenn. Code Ann. § 20-16-101.[2] A party seeking summary judgment may make such a showing by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8–9 (Tenn. 2008). If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id*. at 5 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215(Tenn. 1993)). The non-moving party may accomplish this by:

> (1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. Rule 56.06.

*Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn. 2005). We review the summary judgment decision as a question of law. *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn. 1998). Therefore we review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004). We consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party, and afford that party all reasonable inferences. *Draper*, 181 S.W.3d at 288. "If there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied." *Byrd*, 847 S.W.2d at 215.

---

[2] Tenn. Code Ann. § 20-16-101, applicable to summary judgments, was enacted by 2011 Tenn. Pub. Acts. Ch. 498, became effective July 1, 2011 and is applicable to cases filed on or after that date.

**DISCUSSION**

**A. STATUTE OF LIMITATIONS**

The statue of limitations for legal malpractice, whether grounded in tort or contract, is one year from the time the action accrues. Tenn. Code Ann. § 28-3-104 (a) (2). As noted in *John Kohl & Co. v. Dearborn & Ewing*:

> When the cause of action accrues is determined by applying the discovery rule. Under this rule, a cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant. *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn.1998); *Stanbury v. Bacardi*, 953 S.W.2d 671, 677 (Tenn.1997).

*John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998). The knowledge component of the discovery rule can be established by evidence showing that the plaintiff actually knew that she had suffered an injury or if the plaintiff became aware of facts sufficient to put a reasonable person on notice that an injury had been sustained as a result of the defendant's conduct. *Carvell v. Bottoms*, 900 S.W.2d 23, 29 (Tenn. 1995).[3]

The statement of undisputed facts filed in support of the motion included the following facts pertinent to Ms. Aleo's learning that she suffered a loss:

> 3. On or about June 16, 2008, a Divorce Decree was entered in the Circuit Court for Montgomery County, Tennessee, signed by Judge Michael R. Jones, which included the Marital Dissolution Agreement and a Permanent Parenting Plan.

> 4. Ms. Aleo advised Joe Weyant that the Divorce Decree and/or Marital Dissolution Agreement were incorrect, because it/they failed to dispose of the military retirement of Mr. Aleo, which was a marital asset. This discussion occurred in close proximity to the time when the Divorce Decree, and incorporated Marital Dissolution Agreement, were entered on the Court's minutes.

---

[3] An actual injury occurs when there is a loss of a legal right, remedy, or interest, or the imposition of a liability. *John Kohl & Co.,* 977 S.W.2d at 532. That Ms. Aleo suffered a loss is not at issue in this appeal.

5. On the 27th day of June 2008, Ms. Aleo went to the office of the staff Judge Advocate and was advised thay she would not get a portion of the military retirement because the decree was silent as to that asset.

6. During the month of October 2008, Ms. Aleo spoke to Peter Napolitano about this matter, and her inability to obtain her portion of Mr. Aleo's military benefits.

19. Ms. Aleo first realized she had been injured and/or damaged by the actions or omissions of Joe Weyant on or about June 27, 2008.

20. Ms. Aleo realized she had been injured by the acts or omissions of Joe Weyant when she visited with the Judge Advocate General and was advised she could not obtain retirements benefits from Mr. Aleo because of the lack of appropriate language in the Divorce Decree, and this meeting occurred on June 27, 2008.

Ms. Aleo's deposition included the following testimony relating to the date that she learned of her loss:

Q: So you went to see the Judge Advocate on June 27, 2008.
     A: Yes.

Q: What questions did you have for them?
     A: Just to see if there was anything they could do for me, as far as maybe if I go to the Defense Department with the retirement, with the Divorce Decree, if they would somehow help me get the retirement pay.
     But, again, the response was they didn't have anything to do with it anymore just because my ex-husband was out of the service. He was a civilian

Q: Was it at that time that you knew that you had suffered a loss as a result of this?
     A: Well yeah, I kind of knew before that. Just - - because nothing was being done. Nothing was being filed. Nothing was being amended.

In addition, Attorney Weyant's deposition included the following pertinent testimony:

Q. Did Ms. Aleo - - do you remember when she first came to you to alert you to her concerns, if any, about the absence of that in the MDA and the final decree?
     A. Yes, I do.
     * * *

Q. Was it before of after you filed the MDA with the Court and the final decree?

A. As I recall, it was after.

* * *

Q. What do you recall, if anything, about what she - - her concern that she expressed? What did she say to you?

A. Well, my recollection is that she came to me probably within a month after the entry of the final decree, maybe even less, and told me, "They won't work with this out at Fort Campbell. This is not the pertinent language that is required."

Q. And what did you tell her?

A. I told her, "Well, then we need to get down to fixing this and I'll, you know, make it right. And I won't charge you anything extra, and I'll try to talk to Mr. Aleo."

The factual statements and testimony were sufficient to establish the affirmative defense that the action was barred by the statute of limitations at Tenn. Code Ann. § 28-3-104(a) (2) because it was not filed within one year of Ms. Aleo's learning that she would not receive the pension benefits, thereby negating an essential element of Ms. Aleo's claim. *See Hannan,* 270 S.W.3d at 5.[4] Ms. Aleo was, consequently, required to produce evidence establishing a genuine issue of material fact relative to the date she discovered she had been injured. *Id.*

The statement filed by Ms. Aleo in response to the motion and supporting materials responded to specific statements in Attorney Weyant's statement and asserted eleven additional "disputed material facts." We have reviewed her response and nothing contained therein disputes the portions of Attorney Weyant's statement of material facts or the deposition testimony cited above establishing that she learned of her loss on June 27, 2008. Rather, the "disputed material facts" are largely argumentative and/or conclusory statements in support of her contention that Attorney Weyant committed legal malpractice when he failed to file a motion to set aside the final judgment pursuant to Tenn. R. Civ. P. 60.02. Having failed to create a genuine issue of fact relative to the date she discovered her injury, the affirmative defense was established and the grant of summary judgment on this issue was

---

[4] "To meet its burden of production and shift the burden to the nonmoving party, the moving party must either affirmatively negate an essential element of the nonmoving party's claim *or establish an affirmative defense.*" *Hannan*, 270 S.W.3d at 5 (citing *Byrd v. Hall*, 847 S.W.2d 208, at 215 n.5 (Tenn. 1993)) (emphasis added).

proper. *See Cherry v. Williams*, 36 S.W.3d 78 (Tenn. Ct. App. 2000)[5]; Tenn. R. Civ. P. 56.04.

Ms. Aleo asserts that the statute of limitations should not be measured from June 27, 2008 because she only received "inquiry notice" from the JAG officials that she would not receive the pay as she had negotiated with Mr. Aleo, and that Attorney Weyant's statement to her that he would "fix it" was an "admitted reassurance by [Attorney Weyant that] reasonably removed even an 'inquiry notice' of [Ms. Aleo]." Ms. Aleo also contends that Attorney Weyant concealed her loss from her by promising to file a motion pursuant to Tenn. R. Civ. P. 60.02 in 2008 and continuing to make this promise as late as February or March of 2009; consequently, she asserts that she did not discover her loss until June 2010, when she learned that the time to file the Rule 60 motion had expired. These contentions are without merit.

We do not understand Ms. Aleo's characterization of "inquiry notice." In a malpractice action, the critical inquiry for statute of limitations purposes is when the plaintiff discovered her injury; that is the date at which the cause of action accrues. *John Kohl & Co. P.C.*, 977 S.W.2d at 532; *Spar Gas, Inc. v. McCune*, 908 S.W.2d 400, 403–404 (Tenn. Ct. App. 1995). The record is clear that she learned of her injury on June 27, 2008 and that she informed Mr. Weyant of the loss shortly thereafter. As noted in *Spar Gas, Inc.*, "a plaintiff cannot be permitted to wait until he knows all of the injurious effects or consequences of an actionable wrong before he brings suit on that wrong." *Spar Gas, Inc.*, 908 S.W.2d at 403. Any representation Attorney Weyant made to Ms. Aleo that he would "fix it" by filing a Rule 60 motion was insufficient to operate to toll the statute of limitations. The law is clear that it is the date a plaintiff learns of the injury that determines the start date for statute of limitations purposes, not the date that the injury is quantified.

Lastly, Ms. Aleo asserts that the doctrine of equitable estoppel should be applied to this case to prevent the running of the statute of limitations because Attorney Weyant "misled her from the outset in 2008 all the way through June 2010, preventing her from recognizing her injury which he promised to 'fix' and 'make it right.'" In *Redwing v. Catholic Bishop for Diocese of Memphis* our Supreme Court discussed equitable estoppel, stating:

> In the context of a defense predicated on a statute of limitations, the doctrine of equitable estoppel tolls the running of the statute of limitations when the

---

[5] "To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim." *Cherry v. Williams*, 36 S.W.3d 78, 82–83 (Tenn. Ct. App. 2000).

defendant has misled the plaintiff into failing to file suit within the statutory limitations period. *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d at 145; *Ingram v. Earthman*, 993 S.W.2d 611, 633 (Tenn. Ct. App. 1998). When the doctrine of equitable estoppel is applicable, it prevents a defendant from asserting what could be an otherwise valid statute of limitations defense. *Hardcastle v. Harris*, 170 S.W.3d 67, 84 (Tenn. Ct. App. 2004). The party invoking the doctrine of equitable estoppel has the burden of proof. *Hardcastle v. Harris*, 170 S.W.3d at 85. Thus, whenever a defendant has made out a prima facie statute of limitations defense, the plaintiff must demonstrate that the defendant induced him or her to put off filing suit by identifying specific promises, inducements, suggestions, representations, assurances, or other similar conduct by the defendant that the defendant knew, or reasonably should have known, would induce the plaintiff to delay filing suit. *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d at 145; *Hardcastle v. Harris*, 170 S.W.3d at 85.

*Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012). This court in *Hardcastle* noted that "[e]vidence of vague statements or ambiguous behavior by a defendant will not carry the day for a plaintiff asserting equitable estoppel." *Hardcastle*, 170 S.W.3d at 85.

Ms. Aleo relies on the statements made by Attorney Weyant, that he would "fix it" or "make it right", to meet her burden to establish that she was induced to put off filing her suit. The statements relied upon by Ms. Aleo, however, do not constitute specific promises or assurances that would induce Ms. Aleo to delay filing a malpractice action; rather, they relate to efforts to change the final decree.[6] The record is devoid of any evidence that Attorney Weyant induced Ms. Aleo not to file suit against him and that the doctrine of equitable estoppel should apply to prevent the statute of limitations from running.

## B. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

To prove a claim of negligent infliction of emotional distress, a plaintiff must prove: (1) the defendant owed the plaintiff a duty of care; (2) defendant breached the breach of duty of care; (3) the plaintiff suffered an injury or loss; (4) causation; and (5) that plaintiff

---

[6] Ms. Aleo acknowledges as being undisputed several facts which show that Attorney Napolitano took actions beginning in October 2008 to assist her in correcting the final decree, including preparing an affidavit for Attorney Weyant to sign in support of a Rule 60 motion, meeting with Mr. Aleo in an effort to assist him in signing a new marital dissolution agreement, and exchanging correspondence and negotiating with Mr. Aleo's counsel relative to the retirement benefits. These facts show that efforts were being made to correct the final decree and run counter to a determination that Attorney Weyant misled her with respect to efforts he was taking to amend the final decree.

suffered a serious or emotional injury as a result of the defendant's conduct. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 206 (Tenn.2012).[7] At issue in this appeal is whether the record supports the trial court's holding that there was no evidence that Ms. Aleo suffered a serious mental injury as a result of Attorney Weyant's conduct.

Attorney Weyant's statement of undisputed facts included the following, relative to his assertion that Ms. Aleo did not suffer a serious mental injury:

21. Ms. Aleo has not sought the services of a mental health professional as a result of her divorce.

22. Ms. Aleo has not been prescribed or taken any medication for depression or anxiety as a result of her divorce or any situation related thereto.

Ms. Aleo's deposition testimony regarding serious mental injury was as follows:

Q. Are you presently under the care of any psychologist or psychiatrist?
A. No, sir.

Q. Have you been under the care of a psychologist or psychiatrist since February 2008?
A. No.

---

[7] The Supreme Court in *Rogers* provided a non-exhaustive list of factors to support a showing that the plaintiff has suffered a serious mental injury:

(1) Evidence of physiological manifestations of emotional distress, including but not limited to nausea, vomiting, headaches, severe weight loss or gain, and the like;
(2) Evidence of psychological manifestations of emotional distress, including but not limited to sleeplessness, depression, anxiety, crying spells or emotional outbursts, nightmares, drug and/or alcohol abuse, and unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and worry;
(3) Evidence that the plaintiff sought medical treatment, was diagnosed with a medical or psychiatric disorder such as post-traumatic stress disorder, clinical depression, traumatically induced neurosis or psychosis, or phobia, and/or was prescribed medication;
(4) Evidence regarding the duration and intensity of the claimant's physiological symptoms, psychological symptoms, and medical treatment;
(5) Other evidence that the defendant's conduct caused the plaintiff to suffer significant impairment in his or her daily functioning; and
(6) In certain instances, the extreme and outrageous character of the defendant's conduct is itself important evidence of serious mental injury.

*Rogers*, 367 S.W.3d at 209-10.

* * *

Q. Have you ever taken any antidepressants?
    A. Yes.

Q. Who is prescribed those?
    A. It was like maybe 10 years ago, so it's –it was at the Blanchfield Army Hospital.

Q. You're not presently taking any?
    A. No.

Q. You haven't since - -
    A. I felt they weren't doing any good, so I didn't take them.

Q. You haven't taken any since February of 2008.
    A. No.

This evidence was sufficient to negate an essential element of Ms. Aleo's claim, i.e., that she suffered a serious mental injury due to the actions of Attorney Weyant, thereby shifting the burden to her to produce evidence establishing a genuine issue of material fact that she suffered a serious mental injury. *See Hannan,* 270 S.W.3d at 5.

In her response, Ms. Aleo stated that facts 21 and 22 from Attorney Weyant's statement of material facts, quoted above, were undisputed; she did not address the testimony from her deposition and did not assert any additional disputed fact relative to any element of her claim for negligent infliction of emotional distress. Having failed to create a genuine issue of material fact that she suffered a severe mental injury, summary judgment was proper on that claim.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
RICHARD H. DINKINS, JUDGE

-10-